UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDITH HART,

        Plaintiff,                                   Hon. Richard Alan Enslen

v.                                                   Case No. 1:05-CV-450

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age at the time of the ALJ's decision and 58 years of age as of the date her insured status expired. (Tr. 14, 20, 57). Plaintiff successfully completed high school and worked previously as an assembler and sewing machine operator. (Tr. 14, 91, 96, 331-32, 349-50, 355-56).

Plaintiff first applied for benefits on June 11, 1999, alleging that she had been disabled since January 20, 1998, due to rotator cuff syndrome, de Quervain's syndrome, and lateral epicondylitis. (Tr. 13, 28-39). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 31). On April 7, 2000, Plaintiff appeared before ALJ Anthony Roshak, with testimony being offered by Plaintiff and vocational expert, Pauline Pegram. *Id.* In a written decision dated July 13, 2000, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 31-39). Plaintiff did not appeal this determination.

Plaintiff again applied for benefits on April 30, 2002, alleging that she had been disabled since July 14, 2000, due to bilateral de Quervain's syndrome, left epicondylitis, right shoulder tendinitis, angina, hypertension, and overactive bladder. (Tr. 57-59, 90). Her application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 41-56). On May 18, 2004, Plaintiff appeared before ALJ Larry Meuwissen, with testimony being offered by Plaintiff and vocational expert, Sharon Princer. (Tr. 323-62). In a written decision

dated October 27, 2004, the ALJ determined that Plaintiff was not disabled as defined by the Act. (Tr. 13-20). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff's insured status expired on December 31, 2003. (Tr. 14, 64-82); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

On April 1, 1997, Plaintiff was examined by Dr. Frederick Maibauer. (Tr. 215-16). Plaintiff reported that she was experiencing pain in her left elbow. (Tr. 216). Plaintiff exhibited tenderness over the lateral aspect of her elbow and x-rays revealed a small calcification over the lateral epicondyle. Plaintiff was diagnosed with lateral epicondylitis[1] and instructed to participate in physical therapy. (Tr. 215-16).

On May 29, 1997, Plaintiff reported that her epicondylitis was "80% better." (Tr. 213). An examination of her left elbow revealed "minimal" tenderness. Plaintiff reported that she wore a tennis strap when performing repetitive work which "seems to control her pain." *Id.*

---

[1] An epicondyle is a projection or prominence on the surface of a bone, situated above its condyle or condyles. A condyle is a knuckle-shaped expansion at the end of a bone which forms a joint with another bone. Epicondylitis refers to inflammation of an epicondyle and/or the tissues attached to it. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* E-123-24 (Matthew Bender) (1996).

4

On January 13, 1998, Plaintiff was examined by Dr. Maibauer. (Tr. 210). Plaintiff reported that she was experiencing pain in her right hand and shoulder, as well as her left elbow. She indicated that when performing clerical work her pain was manageable, but that after being transferred back to the assembly line her pain increased. The doctor diagnosed Plaintiff with De Quervain's syndrome[2] of the right wrist. He also noted that Plaintiff had "re-developed tenderness in the trapezius muscle of the right shoulder with radiation into the deltoid muscle and has again aggravated her lateral epicondylitis of her left elbow." Dr. Maibauer restricted Plaintiff to clerical work only, with no use of air guns or repetitive hand activities. *Id.*

On July 28, 1998, Plaintiff was examined by Dr. Maibauer. (Tr. 209-10). An examination of Plaintiff's right shoulder revealed "mild" crepitation, but "satisfactory" range of motion. (Tr. 209). An examination of Plaintiff's right wrist revealed "mild" tenderness, but "satisfactory pinch and full range of motion." An examination of Plaintiff's left elbow revealed "slight" tenderness and "normal" range of motion. Dr. Maibauer concluded that Plaintiff's conditions were "gradually resolving." The doctor reiterated that Plaintiff was limited to the performance of "sedentary, non-labor intensive work." *Id.*

On March 16, 1999, Plaintiff was examined by Dr. Maibauer. (Tr. 155). Plaintiff reported that she was experiencing continued pain in her right hand and shoulder, as well as her left elbow. Plaintiff reported that she experienced pain when attempting to pinch or hold things with her

---

[2] De Quervain's syndrome is characterized by swelling and inflammation of the tendons or tendon sheaths that move the thumb outward. This disorder usually occurs after repetitive use of the wrist. The main symptom is aching pain on the thumb side of the wrist and at the base of the thumb, which becomes worse with movement. *See* De Quervain's Syndrome, available at http://www.merck.com/mmhe/print/sec05/ch074/ch074f.html (last visited on April 27, 2006).

right hand or when attempting to lift with her left upper extremity. The doctor reiterated that Plaintiff was unable to perform industrial manual labor. *Id.*

On August 22, 2000, Plaintiff was examined by Dr. Maibauer. (Tr. 137, 139). Plaintiff reported that she was experiencing pain in her right hand, right shoulder, and left elbow. (Tr. 139). An examination of Plaintiff's right shoulder revealed tenderness and limitation of movement. An examination of her left elbow revealed tenderness. Plaintiff reported that she wore a tennis elbow strap when performing household chores. *Id.* Dr. Maibauer reiterated that Plaintiff "could work as a clerical worker," but "should not work as an industrial assembler." (Tr. 137). The doctor reported that this was a permanent restriction. *Id.*

On September 14, 2000, Dr. Maibauer reported that Plaintiff was "indefinitely" limited to the performance of sedentary work and could not perform light work. (Tr. 201-05).

On November 14, 2000, Dr. Maibauer completed a report regarding Plaintiff's physical capabilities. (Tr. 199-200). The doctor reported that during an 8-hour workday Plaintiff could sit for two hours and stand and/or walk for one hour. (Tr. 199). He reported that Plaintiff could occasionally lift 10 pounds. With respect to Plaintiff's ability to use her upper extremities, the doctor reported that during an 8-hour day Plaintiff could: (a) perform simple grasping activities for two hours, (b) perform pushing and pulling activities for one hour, (c) perform fine manipulation activities for two hours, and (d) reach at or above shoulder level for less than one hour. *Id.* Dr. Maibauer also reported that Plaintiff required "one 10-minute rest period per hour." (Tr. 200).

On February 27, 2001, Plaintiff was examined by Dr. Maibauer. (Tr. 130-31). Plaintiff reported that she was experiencing pain in her right hand, left hand, right shoulder, and left elbow. (Tr. 131). Plaintiff exhibited "normal" range of motion with her right shoulder with

"tenderness at the extremes of motion." An examination of Plaintiff's hands revealed no evidence of deformity, redness, warmth, swelling, or atrophy. An examination of Plaintiff's left elbow revealed tenderness over the epicondyle. *Id.*

On July 24, 2001, Plaintiff reported that she has "been getting along quite well." (Tr. 129). An examination of her right shoulder revealed tenderness with overhead extension, but no evidence of atrophy, redness, warmth, or swelling. An examination of Plaintiff's right hand revealed tenderness, but no evidence of redness, warmth, or swelling. *Id.* An examination of her left elbow revealed tenderness over the epicondyle, but no evidence of neurological abnormality. (Tr. 128).

On July 27, 2002, Plaintiff participated in a consultive examination conducted by Dr. Steven Kotsonis. (Tr. 156-60). Plaintiff reported that previous stints of physical therapy "relieved her pain," but that when she was returned to assembly line work she began experiencing tremendous pain within one week. (Tr. 156). She further reported that "as long as she's not working she is doing fairly well." *Id.* An examination of Plaintiff's right shoulder revealed "significant[ly] decreased range of motion," but no evidence of grip strength or motor weakness. (Tr. 160). An examination of Plaintiff's left elbow revealed "significant point tenderness" over the left lateral epicondyle. *Id.* An examination of Plaintiff's hands revealed full dexterity and grip strength. (Tr. 157). The results of motor, sensory, and reflex examinations were unremarkable. (Tr. 160).

On January 13, 2004, Plaintiff underwent surgery to correct stress incontinence. (Tr. 296-300). Plaintiff's condition improved following surgery. (Tr. 312).

On June 4, 2004, Dr. Amrit Singh completed a report regarding Plaintiff's physical capabilities. (Tr. 321-22). The doctor reported that during an 8-hour workday, Plaintiff can sit for eight hours and stand and/or walk for six hours. (Tr. 321). The doctor reported that Plaintiff can

frequently lift five pounds with either of her upper extremities, and can occasionally lift 20 pounds with her left upper extremity. As for Plaintiff's ability to perform repetitive activities with her upper extremities, Dr. Singh reported that Plaintiff can perform simple grasping and fine manipulation activities with her left upper extremity, but not her right upper extremity. He further noted that Plaintiff cannot perform pushing or pulling activities with either of her upper extremities. *Id.* The doctor also reported that Plaintiff requires "one 10-minute rest period per hour." (Tr. 322).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) right shoulder tendinitis; (2) left elbow epicondylitis; and (3) stress urinary incontinence, improved with surgery. (Tr. 16). The ALJ further determined that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.*

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform unskilled light work[4] with occasional reaching of her upper extremities. (Tr. 17, 358-59). Based on this RFC, as well as the testimony of a vocational expert, the ALJ determined that Plaintiff retained the ability to perform her past relevant work as a quality control operator. (Tr. 17-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

        **1.    There Does Not Exist Substantial Evidence that Plaintiff can Perform her Past Relevant Work**

As noted above, Plaintiff worked previously as an assembler and sewing machine operator. Plaintiff also indicated that she previously worked as a quality control operator for a brief period of time. (Tr. 355-59). The vocational expert testified that even if limited to the extent articulated by the ALJ's RFC determination, Plaintiff would still be able to perform her past relevant

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

work as a quality control operator. (Tr. 358-59). Finding that Plaintiff retained the ability to perform her past relevant work, the ALJ concluded that Plaintiff was not disabled.

There is no dispute that a claimant who is capable of performing her past relevant work is not entitled to benefits. *See* 20 C.F.R. § 404.1520(e). The deficiency with the ALJ's decision is that there does not exist substantial evidence that Plaintiff's previous work as a quality control operator constituted "past relevant work" as such is defined by the relevant regulations.

The term "past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). However, work which the claimant performed "only 'off-and-on' or for brief periods of time" do not constitute past relevant work. 20 C.F.R. § 404.1565(a); *see also*, *Robinson v. Secretary of Health and Human Services*, 1988 WL 113296 at *2 (6th Cir., Oct. 26, 1988) (citing Social Security Regulation 82-62) (work which was performed "only sporadically or for brief periods of time" do not constitute "past relevant work").

Plaintiff testified that when she worked for General Motors she lacked the seniority to perform any non-assembly position for longer than 30 days. (Tr. 332, 339-41). Despite the fact that working on the assembly line caused Plaintiff to experience work-preclusive symptoms, she lacked the seniority to perform other jobs in the plant - even those jobs which she could have performed consistent with her limitations. With respect to the quality control operator position, Plaintiff testified that "because of my seniority, I wasn't left on a quality operator job very long." (Tr. 359). There is nothing in the record contradicting this testimony or calling such into question.

The Court concludes, therefore, that Plaintiff's sporadic and temporary work as a quality control operator fails to qualify as "past relevant work" as defined by the relevant regulations.

Thus, the ALJ's decision that Plaintiff can perform her past relevant work is not supported by substantial evidence. Moreover, even if Plaintiff's work as a quality control operator is considered "past relevant work," there does not exist substantial evidence that Plaintiff could have performed such work consistent with her RFC.

The ALJ concluded that Plaintiff retained the ability to perform unskilled light work with only occasional reaching with her upper extremities. With respect to her work as a quality control operator, Plaintiff was asked whether this job required her to lift her upper extremities over her head more than occasionally. (Tr. 359). In response, Plaintiff testified that "*it varied.*" *Id.* In other words, as Plaintiff testified, she was sometimes required to lift her upper extremities over her head to an extent beyond that recognized by the ALJ's RFC determination. Neither the vocational expert nor the ALJ inquired further about Plaintiff's work as a quality control operator. Moreover, the record contains no evidence contradicting Plaintiff's testimony in this regard or otherwise calling such into question. There does not exist, thererfore, substantial evidence that Plaintiff's prior work as a quality control operator (even assuming such constitutes past relevant work) could be performed consistent with her RFC.

In sum, the ALJ's determination that Plaintiff retained the ability to perform her past relevant work as a quality control operator is not supported by substantial evidence for the two reasons articulated herein.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been

resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist compelling evidence that Plaintiff is disabled. While the medical evidence clearly reveals that Plaintiff was unable to perform her previous work as an assembler or sewing machine operator, such evidence also suggests that Plaintiff may have been able to perform other less demanding jobs. The Commissioner's decision must, therefore, be reversed and this matter remanded for further factual findings, including but not necessarily limited to, a determination of whether there existed (as of the date Plaintiff's insured status expired) a significant number of jobs which Plaintiff could perform consistent with her RFC.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled. Accordingly, the Court recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  June 5, 2006                                              /s/ Ellen S. Carmody
                                                                 ELLEN S. CARMODY
                                                                 United States Magistrate Judge